liLANDRIEU, Judge,
dissents with reasons.
I do not find that the priority ranking system used by the City in awarding the contract violated the State Public Bid Law or the Charter of the City of New Orleans.
In addition, the only matter before us is the denial of a preliminary prohibitory injunction by the trial court to enjoin the City from awarding the contract to Merrick Construction, Inc., which, by order of the trial court, was heard on verified pleadings and affidavits alone. The majority, however, in addition to reversing the trial court and ordering the trial court to issue a preliminary injunction prohibiting the City from awarding the contract to any bidder other than River Road Construction, Inc., also orders the trial court to suspend the contract if one has been let.
From a procedural standpoint, it is appropriate for the majority to order the trial court to issue a preliminary injunction as prayed for by River Road Construction, Inc. since the majority finds that a preliminary injunction should have been issued. It is inappropriate, however, for this court to expand the injunction beyond that which was prayed for without a hearing. Surely, the City, as well as the contractor, has a right to a hearing at the trial court level before the injunction prayed for is expanded to include a suspension of a contract already let and under which work is being performed.
If the plaintiff wishes to have the injunction broadened, it can petition the | atrial court to do so. There the rights of the respective parties can be considered and the prudence of suspending the contract measured. The supervisory powers of this court, as well as the right to an appeal, will still be available to an aggrieved party.
hAPPENDIX “A”
Cost of equipment $1,000,000
x .20
$ 200,000
Less other Louisiana credit on purchase $ 100,000
Maximum credit for all taxable periods $ 100,000
B. One-fifth (20 percent) of the maximum total credit related to a purchase of qualified recycling equipment is earned each taxable period in which the equipment continues to be in use exclusively in Louisiana to a maximum of five periods. Example:
Maximum credit for all taxable periods $ 100,000
x.20
Credit earned for this taxable period $ 20,000
ample: C. The maximum credit which may be claimed for all purchases of qualified recycling equipment, including carryover of previously earned but unused credits, in any taxable period shall not exceed 50 percent of the tax which would be otherwise due. Ex-
Tax otherwise due: Income tax Franchise tax 00 to oo o o o o
Total $ 30,000
x 150
Maximum credit to be claimed on return $ 15,000
D. Any unused credit for a taxable period in which a credit is earned may be carried forward to subsequent years until the credit is exhausted.
E. If the qualified recycling equipment is sold or exchanged before the entire credit is claimed, any unearned portion of the credit shall be canceled for all periods following the period of sale.
AUTHORITY NOTE: Promulgated in accordance with R.S. 47:6005.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of the Secretary, LR 18:842 (August 1992).
Chapter 105. Waste Tires
§ 10501. Purpose
The legislature finds that removal of certain materials from the solid waste stream going into landfills currently being utilized for the disposal of solid waste in Louisiana is necessary to protect our environment, prevent nuisances, protect the public health, safety, and welfare, extend the usable life of the facilities, aid in the conservation and recovery of valuable resources, and to conserve energy by efficient reuse of these prod *1173 ucts, thereby benefiting all citizens of the state.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:37 (January 1992).
§ 10503. Administration
This program shall be administered by the Solid Waste Division, Office of Solid and Hazardous Waste, Department of Environmental Quality.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:37 (January 1992).
§ 10505. Definitions
The following words, terms and phrases, when used in conjunction with the Solid Waste Rules and Regulations, shall have the meanings ascribed to them in this Section, except where the context clearly indicates a different meaning:
Disease Vector — animals such as rodents, fleas, flies, mosquitoes and other arthropods that are capable of transmitting diseases to humans.
Disease Vector Control Plan — a plan developed to control the growth and spread of disease vectors. Such a plan shall conform to the appropriate guidelines and standards established by the Louisiana Department of Agriculture and the Department of Health and Hospitals.
End User — the purchaser of a new tire who will use the tire on a motor vehicle.
Facility — any land and appurtenances thereto used for storage, processing, recycling, and/or disposal of solid waste or tire material, but possibly consisting of one or more units. (Any earthen ditches leading to or from a facility that receive waste are considered part of the facility to which they connect; except ditches which are lined with materials which are capable of preventing groundwater contamination.)
Fleet Operator — any person, business or governmental entity that owns or operates fleets of trucks, taxicabs, buses, farm implements or other vehicles and who purchased tires to service all, or a portion, of his own tire needs and who in the |2course of his normal business activities generates 100 or more waste tires per calendar year.
Motor Vehicle — an automobile, motorcycle, truck, trailer, semi-trailer, truck-tractor and semi-trailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power; but the term does not include bicycles and mopeds.
Premises — a unit of land and/or buildings, or any portion thereof. Property shall be considered as contiguous parcels even if separated by a utility easement or road or railroad right of way.
Permit — a written authorization issued by the administrative authority to a person for the construction, installation, modification, operation, closure of facilities used or intended to be used to process, collect or transport waste tires in accordance with the Act, these regulations, and specified terms and conditions.
Permittee/Permit Holder — a person who is issued a permit and is responsible for meeting all conditions of the permit and these regulations at a facility.
Promiscuous Tire Pile — a pile of 10 or more waste tires that has resulted from disposal activities by anyone other than the landowner and whose operations are not permitted by the administrative authority.
Storage of Tire Material — the accumulation of tire material for recycling or reuse.
Tire — a continuous solid or pneumatic rubber covering encircling the wheel of a motor vehicle.
Tire Dealer — any person, business or firm that engages in the sale of new tires for use on motor vehicles.
Tire Disposal — to deposit and/or bury waste tires whole, sliced, cut, chipped, shred *1174 ded, etc., as a method of ultimate disposal in a permitted solid waste disposal facility.
Tire Material — waste tires after processing; such as: chipped, shredded, cut or sliced tires, crumb rubber, steel cord, fiberglass, oil, carbon black, etc.
Tire Monofill Facility — a facility for the storage of tire material.
Tire Re-treading Facility — a facility that converts waste tires into useable tires.
Unauthorized Waste Tire Pile — a pile of 10 or more waste tires whose storage and/or disposal is not authorized by the administrative authority.
Waste Tire — a whole tire that is no longer suitable for its original purpose because of wear, damage, or defect.
Waste Tire Collection Center — a site where waste tires are collected from the public prior to being offered for recycling.
Waste Tire Collection Facility — a location where waste tires can be stored or collected for transport to a recycling facility or processor. A tire dealer shall not be considered a collection facility unless the dealer accepts tires from other dealers, or municipalities, and exceeds 1,500 tires collected on site at any one time.
Waste Tire Processing Facility — a site where equipment is used to cut, burn, or otherwise alter whole waste tires so that they are no longer whole.
Waste Tire Transporter — a person or company that transports waste tires.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:37 (January 1992).
§ 10507. Exemptions
The persons, facilities, or facility operations listed below are exempt from the requirements of these regulations. Any persons, facilities, or other entities subject to these regulations may petition the department for exemption from these regulations or certain portions thereof in accordance with LAC 33:VII.Subpart 1.
A. The collection or transportation of tires from individual residences as part of a collection contract is exempt if the tires are not commingled with other solid waste and delivered to a processing facility. The contract must be in place on the effective date of this Chapter in order to comply with this exemption. This exemption is in effect for the term of said contract and any extension authorized under this contract.
B. Vehicles that transport waste tires, need not be permitted as a “waste tire transporter”, if:
1. the vehicle contains five or less waste tires; or
2. the department determines that the person engaged in the transportation did not know such waste tire had been mixed or commingled with the solid waste, or determines that it is not economically and environmentally feasible to remove and recover the tires; or
3. the vehicle originated outside the boundaries of Louisiana and is destined for a point also outside the boundaries of Louisiana, provided no tires are loaded or unloaded within the boundaries of Louisiana.
C. Requirements for Other Exemptions:
1. written justification must be provided to the administrative authority for the type of exemption sought;
2. it must be demonstrated that because of the uniqueness of the particular situation, compliance with the identified provision would tend to impose an unreasonable economic or technical burden on the person or on the public safety; and
133. it must be demonstrated that the proposed exemption to the regulated activity will not adversely affect the environment, public health, safety, or welfare.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:38 (January 1992).
*1175 § 10509. Prohibitions
A. After January 1, 1991, no person may knowingly or intentionally dispose of waste tires in a landfill within the boundaries of Louisiana.
B. After January 1, 1990, no person may store waste tires unless they are:
1. collected and stored at a tire dealer for the purpose of collecting a quantity large enough to economically transport to a collection or processing facility. If the quantity stored exceeds 1,500 tires the dealer must obtain a permit as a collection facility; or
2. collected and stored at a permitted waste tire collection facility; or
3. collected and stored at a permitted waste tire processing facility.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:38 (January 1992).
§ 10511. Permit System
A. Permit Requirements
1. Scope. Persons or businesses that collect, process, and/or transport waste tires must secure a permit and are subject to the requirements detailed in these regulations.'
2. Types of Permits
a.Temporary Permit. A permit that allows continued operation of an existing facility or transporter, in accordance with an approved interim operational plan; but does not allow the expansion or modification of the facility. The administrative authority may issue a temporary permit in the following situations:
i. to allow operations to continue at an existing facility while a standard permit application is being processed;
ii. to allow operations to continue at an existing facility while a closure plan is being processed or while a facility ⅛ being closed in accordance with a closure plan; or
iii.to allow an applicant for a permit for a proposed facility to begin construction and/or operation on a limited basis for good cause shown.
b.Standard Permit. A permit issued by the administrative authority to applicants of processing and/or collection facilities that have successfully completed the standard permit application process.
3.General Permit Provisions
a. Permit Duration. A standard permit issued under this Section shall be valid for five years (subject to renewal) from the date of issuance unless revoked. Applications for renewals shall be submitted at least 180 days prior to the date of expiration.
b. Transfer of Permit. Permits and decals issued pursuant to these regulations are assigned only to the permittee and cannot be transferred, sublet, leased, or assigned, without prior approval of the administrative authority.
c. Changes. It shall be the duty of each permittee to notify the department in writing within five working days of any significant change regarding the information in the permit.
B. Suspension or Revocation of Permit. The administrative authority may review a permit at any time. After review of a permit, the administrative authority may suspend or revoke a permit, in whole or in part, for cause in accordance with the law.
C. Permit Application Process
1. Notification Form. Collectors, Processors, and/or Transporters of waste tires shall, within 30 days after promulgation of these regulations, notify the department in writing of such activity. The notification form shall be obtained from the department. (See Appendix, Forms 1 and 2)
2. Permit Application. Within 180 days after receipt of the notification form, the department will perform an on-site investigation to verify facility classification. Based on the findings of the classification inspection, the facility will be issued either a temporary permit or an Order to Close. The issuance of a temporary permit requires that the fácil *1176 ity complete and submit to the department a formal permit application accompanied by the appropriate application fee. The temporary permit will allow the facility to operate under an approved operational plan until the standard permit application is either approved or denied. In no case will a temporary permit be issued for more than one year.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:38 (January 1992).
§ 10513. Standard Permit Application Form
A. Application for Permit
1. Each applicant requesting a permit pursuant to these regulations shall complete the standard application form |4designed for that classification, including, but not limited to the following information: (See Appendix)
a. the name of such person, business or organization;
b. the legal and business address and telephone number of the permittee and contact person, associated with the permittee;
c. the location of the business by Section, Township and Range;
d. a description of each vehicle which will be used by such applicant for the transport of waste tires including the make, model, year, license number and name of registered owner if different from that of the transporter.
2. Certification. The applicant must provide and sign legal certification that all information provided in the application is true and correct with the possibilities of punishment under the law for false information.
B. Supplementary Information for Collectors and Processors. The following information is required for all facilities that collect and/or process waste tires, and includes, but is not limited to, the following:
1. the type of processing the facility will perform, e.g., cutting, slicing, shredding, crumb rubber, pyrolysis, etc.;
2. the end use of the processed tire material, e.g., rubber, crumb rubber, steel, fiberglass, oil, carbon black, etc., will be used for tire derived fuel (TDF) to manufacture asphalt rubber, rubber mats, bumper guards, etc.;
3. an operational plan outlining facility access, security, operational contingency planning, safety, and disease vector control;
4. a closure plan outlining the closure of all waste tire storage areas, and the method of disposal of any waste tires or tire material on site;
5. evidence of general liability insurance in the amount of $1,000,000, proof of which must be submitted with the appropriate section of the standard application form. Evidence of this coverage shall be updated annually and provided to the department; and
6. a bond, bank letter of credit, or money security made payable upon default to the department into the Environmental Trust Fund. The bond amount will be an amount equal to $1 per whole tire and/or $1 per cubic yard of processed tire material on the site at the license renewal date. To ensure sufficient assets to cover facility closure, the minimum amount of the bond, bank letter of credit or money security shall be $5,000.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:39 (January 1992).
§ 10515. Waste Tire Fee System
Each licensed applicant shall submit a nonrefundable application fee in the amount specified, according to the categories listed below. The appropriate fee must accompany the permit application.
A. Permit Application Fee
1. Transporter — $100;
2. Collection Facility — $500; and
3. Processing Facility — $500 fee;
*1177 4. Modifications — $50.
B. Annual Monitor and Maintenance Fee
1. Transporters — $25/vehiele/year
2. Collection Facility — $100/year
3. Processing Facility — $100/year
C. Waste Tire Fee. A waste tire fee is hereby imposed on each new tire sold in Louisiana, to be collected by the tire dealer at the time of retail sale from the end user. The fee shall be $2 per tire.
1. The disposition of the fee shall be as follows:
a. $1 dollar shall be retained by the tire dealer to cover the costs of collection, transportation, processing and disposition of waste tires.
b. the remaining $1 will be forwarded to the department by the tire dealer and will be deposited in the Environmental Trust Fund. The money shall be designated for the administration of the waste tire recycling regulations and the cleanup of promiscuous tire piles.
2. Nothing herein shall prohibit a tire dealer from including disposal costs within the retail sales price of any tire.
AUTHORITY NOTE: Promulgated in accordance with R.S. 80:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:39 (January 1992).
§ 10517. Waste Tire Facility Standards
The following operational standards will govern all facilities that collect and/or process waste tires.
A.General Requirements
1. All waste tire facilities must have controlled access to the site through the use of fences, gates, or other means approved by the administrative authority.
2. Waste tires may be stored at a collection or processing facility using outside or inside storage or a combination of both methods.
153. All facilities shall control disease vectors through the use of a disease vector control plan and shall keep the site free of excessive grass, underbrush, or other harbor-age.
B. Outdoor Storage Requirements
1. Waste tire pile dimensions should not exceed: height-10 feet, width-20 feet, length-50 feet.
2. Fire Lanes
a. waste tire or tire material piles shall be separated by a minimum of 50 feet wide lanes to allow access by emergency vehicles and equipment.
b. Access lanes must be all-weather roads.
c. All facilities shall provide for on site fire control. Arrangements must also be made for site fire protection through immediate notification of local fire protection authorities and documentation of these arrangements must be included in the operational plan.
3. All storage sites shall maintain proper drainage away from the storage site.
C. Special Storage Requirements for Collecting/Processing Facilities
1. A waste tire facility may not accept any waste tires for collection or processing if it has reached its designated storage limit. The storage limit for a waste tire processing facility is 365 times the daily processing capacity of the processing facility. Records of a facility’s storage limit and the amount of tires in storage shall be maintained as documentation of the relevant amounts of waste tires and available to the department upon request.
2. The storage limit for a waste tire collection facility shall be as specified in the standard permit. At a minimum, 75 percent of the waste tires received annually by a waste tire collecting facility must be removed from the facility during that year’s operation.
3. If a facility fails to meet the requirements of LAC 33:VII.10517.C.2 for 24 months, it will be subject to the provisions of LAC 33:VII.10517.D.
*1178 D.Long Term Storage/Monofills
1. Tire processors may, if markets for their tire materials are not available, store waste tire material in chipped, shredded or other non-tire forms for extended periods but not to exceed five years.
2. Tire processors may store waste tire material in above ground piles or in monofills if:
a. the processor has no immediate market for the tire material but has reasonable belief that such markets will develop;
b. the processor shall provide the following:
i. a plan to control run-on/run-off of storm water;
ii. a disease vector control program, and;
iii. an emergency plan to prevent and/or respond to any fire or other event which may release pollutants or contaminants from such site.
c. the ultimate goal of the processor is to reclaim the tire material at a future date for processing of the rubber, steel and fiberglass, or of the original components of the tires; and
d. the processor submits within 24 months of the initiating of the storage an assessment plan to address the need for additional operational conditions, including but not limited to, the potential need for the permittee to provide a storage area liner system and leachate collection system.
e. the processor shows financial responsibility as defined in LAC 3S:VIL10513.B for ultimate cleanup, disposal and closing of the site, should no market develop within five years of receipt of the documented volume of material.
3. Permitted solid waste landfills may accept chipped, shredded, cut or sliced tire material.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:39 (January 1992).
§ 10519. Manifest and Reporting Requirements
A. A manifest showing the number of tires, the name of the tire dealer, transporter, transporter number and the name and number of the collection or processing facility shall accompany each shipment of waste tires. The manifest shall be a four part form in numerical sequence to be signed by all parties with designated copies for each tire dealer transporter and facility. (See Appendix, Form 3)
B. The tire dealer shall retain the tire dealer’s copy of the manifest; the transporter shall retain the transporter’s copy of the manifest; the collecting or processing facility shall retain the facility’s copy of the manifest and return the fourth copy of the manifest to the originating tire dealer within 30 days of the facility’s receipt of the waste tires.
C. No person or facility may accept waste tires for processing without a properly completed manifest as specified herein.
D. If waste tires are transported from a collection center, a new manifest must be originated until the waste tires reach a processing facility. In this event the processing facility shall return the fourth copy of the manifest to the collection facility.
E. Manifests shall be maintained by all parties for three years.
F. The manifest shall be maintained for audit by all parties who are required to sign it and shall be available for review during the regular business hours of the persons required to keep such records.
|;;G- No manifest is required for waste tires being transported to a tire retreading facility. Waste tire shipment of this nature must be accompanied by an invoice used in the normal course of business.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:40 (January 1992).
*1179 § 10521. Specific Requirements and Responsibilities
A Responsibilities of Tire Dealers
1. All tire dealers must notify the department of their existence within 90 days of promulgation of these regulations and obtain a DEQ Identification Number. Notification shall be on forms provided by the department. (See Appendix, Form 4)
2. Tire dealers must accept one waste tire for every new tire sold, from the purchaser of the new tire, at the time of purchase, unless the purchaser requests permission to retain the waste tire.
3. Each tire dealer doing business in the State of Louisiana shall be responsible for the collection of the waste tire fee. Each tire dealer shall retain $1 of the $2 fee to assist in defraying costs of disposition. The tire dealer shall remit $1 of the fee to the department on a quarterly basis. (See Appendix, Form 5)
4. Tire dealers must provide notification to the public sector via signs, made available by the department, indicating that:
a. “It is unlawful for any person to dispose, discard, burn or otherwise release waste tires to the environment in a manner in contravention to the Louisiana Solid Waste Regulations. A fine of up to $25,000 per day per violation shall be imposed on any company, or individual, who violates these rules and regulations;”
b. “All Louisiana tire dealers are required to collect a waste tire cleanup and recycling fee of $2 per tire upon sale of each new tire;”
e. “This fee must be collected whether the purchaser retains the waste tires or leaves the waste tires with the dealer.”
d. “Tire dealers must accept one waste tire for every new tire sold, from the purchaser of the new tire, at the time of purchase, unless the purchaser elects to retain the waste tire.”
5. The waste tire fee shall be listed on a separate line of the retail sales invoice.
6. No tire dealer shall remove or allow to be removed waste tires from his property or business without a completed manifest.
7. Tire dealers must provide a cover adequate to exclude water from within the waste tires when stored outdoors, and provide for rodent control.
B. Responsibilities of Waste lire Transporters
1. Manifest Requirements
a. No transporter shall receive waste tires without a properly completed and signed waste tire manifest.
b. No transporter shall deliver tires to a collection or processing facility, without also delivering to the operator of the facility, the facility’s copy of the completed and signed manifest. The transporter shall obtain the signature of the agent for the collection and/or processing facility on the manifest and shall retain the transporter’s copy.
e. The transporter shall retain the transporter copy of the manifest for a period of three years. Transporters shall make these records available to the department upon request.
d. A transporter shall not transport any waste tires without having at all times, in the vehicle transporting such tires, a copy of the manifest for the tires.
e. Any waste tires manifested, but not delivered to a collection or processing facility, but delivered instead to a business for resale, must be noted on the manifest by the transporter or tire dealer.
2. Interstate Transport Manifest Requirements. Any person who engages in the transportation of waste tires from Louisiana to other states or countries or from other states to Louisiana, or persons who collect or transport waste tires in Louisiana but have their place of business in another state, shall comply with all of the requirements for transporters contained in LAC 33:VII.Chap-ter 7 of the Solid Waste Rules and Regulations.
3. Approved Disposition of Waste Tires. Transporters of waste tires shall deliver waste tires in Louisiana only to a permitted *1180 collection or processing facility unless the waste tires are delivered out of state.
4. Waste Tire Transporter Vehicle Standards. The type and size of vehicles shall comply with the regulations and licensing of the Department of Transportation and Development and with applicable local ordinances governing weight and size for the streets that must be traveled.
5. All transporters are subject to inspections by the department.
6. In addition to the state transporter’s permit, the department shall issue to the transporter, one decal for each truck, to be attached to the driver’s door of the truck.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:40 (January 1992).
_|t§ 10523. Responsibilities of Property Owners of Promiscuous Waste Tire Pile
A. Notification. The property owner of any promiscuous waste tire piles shall within 90 days after the effective date of these regulations provide the department with information concerning the location and the quantity of waste tires accumulated on the property. The form for reporting this information shall be secured from the department. (See Appendix, Form 6)
B. Cleanup of Promiscuous Waste Tire Pile. Property owners of promiscuous waste tire piles are responsible for the cleanup of all waste tires located on their property.
C. Disease Vector Control for Promiscuous Waste Tire Piles. Property owners of promiscuous waste tire piles are responsible for providing disease vector control measures adequate to protect the health and safety of the public.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:41 (January 1992).
§ 10525. Reports
A. All tire dealers shall submit, on forms available from the department, a quarterly report containing the number of new tires sold and remittance of $1 per tire sold. Reports are due within 30 days of the end of each quarter. (See Appendix, Form 5)
B. All collection and processing facilities shall submit an annual report on forms available from the department. The annual reports are due within 30 days of the end of each calendar year. (See Appendix, Form 7)
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:41 (January 1992).
§ 10527. Enforcement
A. Failure to Comply. Failure of any person to comply with any of the provisions of these regulations, or of the terms and conditions of any permit granted, or order issued, pursuant to law and hereunder, constitutes a violation of the Act.
B. Investigations: Purposes, Notice. Investigations shall be undertaken to determine whether a violation has occurred or is about to occur, the scope and nature of the violation, and the identity of the persons or parties involved. Upon written request, the results of an investigation shall be given to any complainant who provided the information prompting the investigation, and, if advisable, to the person(s) under investigation, if the identity of such person(s) is known.
C. Development of Facts, Reports. The administrative authority may conduct inquiries and develop facts through staff investigatory procedures, or formal investigations, and may conduct inspections and examinations of facilities and records. The administrative authority may hold public hearings and/or issue subpoenas pursuant to R.S. 30:2025.1 requiring attendance of witnesses and production of documents, or take such other action as may be necessary and authorized by the Act or rules promulgated by the administrative authority. At the conclusion of the investigation, all facts and information that have been developed concerning any *1181 cited violation shall be compiled by the staff of the department. A report of the investigation shall be presented to the administrative authority for use in possible enforcement proceedings.
D. Enforcement Action. When the administrative authority determines that a violation of the Act or these regulations, or the terms and conditions of any permit issued hereunder, has occurred or is about to occur, he or she shall initiate one or more of the actions set forth in R.S. 30:2025, or as otherwise provided by appropriate rules or statutes.
AUTHORITY NOTE: Promulgated in accordance with R.S. 30:2411-2422.
HISTORICAL NOTE: Promulgated by the Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division, LR 18:41 (January 1992).